**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRYAN TEEL,<br><br>Plaintiff,<br><br>vs.<br><br>BEACON METAL CO., INC. d/b/a BEACON SCRAP METAL CO., DEBBIE CAMERON, and RENEE HAVENS, in their professional and individual capacities,<br><br>Defendants. | **Civil Case No.: 2:21-cv-19023**<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Bryan Teel, by his attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges upon personal knowledge and information and belief as to other matters, as follows:

**NATURE OF ACTION**

1. Plaintiff Bryan Teel ("Mr. Teel" or "Plaintiff) brings this action against his former employers, Defendants Beacon Metal Co., Inc. ("Beacon" or the "Company"), Debbi Cameron ("Ms. Cameron"), and Renee Havens ("Ms. Havens")(Collectively "Defendants") for violations of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD"), as well as violations of the New Jersey Equal Pay Act, N.J.S.A. § 10:5-12(t) *et seq.* ("NJEPA").

2. Defendants' violations are egregious in that Plaintiff was underpaid and endured unequal treatment based on his race/color and unlawful retaliation for complaining about the same.

3. Plaintiff now seeks lost back pay and benefits, lost front pay and benefits, compensatory and punitive damages, statutory penalties, attorneys' fees and costs, as well as

declaratory and injunctive relief for violations of Plaintiff's statutory rights and injuries Plaintiff has sustained as a result of Defendants' unlawful employment discrimination based on his race/color.

## ADMINISTRATIVE PREREQUISITES

4.   Prior to the filing of this Complaint, on July 6, 2021, Mr. Teel filed a formal charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on his race in violation of Title VII. On July 21, 2021, the EEOC issued a Notice of Right to Sue letter authorizing Mr. Teel to bring this suit in federal or state court within 90 days.

5.   Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

6.   At all relevant times, Mr. Teel was a black African American and resident of the State of New Jersey.

7.   At all relevant times, Mr. Teel was employed by Defendant Beacon.

8.   From April 2018 to April of 2021. Mr. Teel was employed as a Machine Operator on Beacon's premises located at 6075 Main Street, South Amboy, NJ, 08879-1144.

9.   Defendant Beacon is incorporated in the State of New Jersey and maintains a principal place of business at 6075 Main St., South Amboy, NJ, 08879-1144. Defendant Beacon also maintains a business location at 215 Throckmorton St., Freehold, NJ 07728.

10.   Beacon is a recycling and scrap metal collection business that offers towing and dumpster services, metal and alloy testing, and plant dismantling/demolition services.

11.   Defendant Ms. Cameron was at all relevant times the owner/operator of Beacon and a Caucasian woman.

12. Defendant Ms. Havens was at all relevant times the owner/operator of Beacon and a Caucasian woman.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981 and Title VII, federal laws.

14. This Court has personal jurisdiction over Defendants because Defendants' principal place of business is based in the State of New Jersey; additionally, the claims arose out of Defendants' contacts with New Jersey and Defendants intentionally acted in such a way as to cause injury to Mr. Teel in the State of New Jersey.

15. This Court has supplemental jurisdiction over Plaintiff's state law claims brought under the NJLAD and NJEPA pursuant to 28 U.S.C. § 1367.

16. Venue is proper in the United States District Court, District of New Jersey pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this District and because the Defendants do business and are located in this District.

## FACTUAL ALLEGATIONS

**Mr. Teel's Background and Employment at Beacon Scrap Iron and Metal**

17. Mr. Teel is a 30-year-old African American man raised in Trenton, New Jersey.

18. Mr. Teel was hired as a Machine Operator at the South Amboy location of Beacon in April of 2018.

19. Upon information and belief, when Mr. Teel was hired, there were approximately forty (40) employees across all locations of the Company, Mr. Teel included.

20. Mr. Teel was one of only three black employees who worked at Beacon's South Amboy location, and of the three, had the darkest skin complexion.

21. The owners of Beacon, as well as all other employees, are Caucasian.

22. The South Amboy location Supervisors were, at all relevant times, Clyde Cameron IV and Clyde Cameron III, and upon information and belief, were the brother and nephew of the owners, respectively.

23. During Mr. Teel's time working for Beacon, Mr. Teel was responsible for operating a variety of machines including, but not limited to loaders, cranes, bulldozers, and forklifts. Mr. Teel would also load and unload metal from trucks, cut and clean metals, break down large pieces of metal, and train new employees in these job duties.

24. Mr. Teel diligently and competently performed his job duties for the approximately three (3) year period he was employed at Beacon's South Amboy location.

25. However, only a few months into his employment in 2018, his co-worker, Mr. Rick Cameron ("Rick") began calling Mr. Teel racial slurs on a routine basis.

26. For instance, Mr. Cameron would in passing refer to Mr. Teel as "buckwheat", "Toby", and "monkey," in front of other co-workers - some of whom Mr. Teel was in the process of training or supervising.

27. The term "buckwheat" is a reference to a character from the series "Our Gang" or "Little Rascals," and is used colloquially as a term to denote a caricature of black children portrayed in that media. *See The Picaninny Caricature,* Jim Crow Museum of Racist Memorabilia, Ferris St. Univ., *available at* https://www.ferris.edu/HTMLS/news/jimcrow/antiblack/picaninny/homepage.htm.

28. The term "Toby" is a reference to a black enslaved character in the television drama "Roots," whose given name Kunta Kente, but is later renamed "Toby" by his slave masters.

29. Additionally, only a few days prior to the April 23, 2021, incident Mr. Cameron referred to Mr. Teel as "Planet of the Apes" in front of his other co-workers.

30. These slurs were intended to insult Mr. Teel's race/color as black man of dark complexion, and Mr. Teel understood that such language was used against black individuals in a racially derogatory manner.

31. Though Mr. Teel felt uncomfortable and harassed by the routine use of this language on the part of Rick– he continued to perform his job for three (3) years until the April 23, 2021, incident occurred.

**The Racially Motivated Attack and Retaliatory Termination of Mr. Teel on April 23, 2021**

32. On April 23, 2021, Mr. Teel arrived at the South Amboy office a few minutes prior to his scheduled work time to get changed into his uniform. As he was getting changed, Mr. Teel was playing music on a speaker.

33. Rick was on his way to the office and about twenty feet away from Mr. Teel when he turned to Mr. Teel and demanded that he turn down the volume of the music. Immediately thereafter, Rick then began verbally harassing Plaintiff, calling him "drunk," and telling him to "go home."

34. After Mr. Teel complied with Rick's request to turn down the volume on his speaker, Rick came towards him and forcibly grabbed the speaker out of Mr. Teel's hand.

35. When Mr. Teel tried to take back possession of the speaker, Rick called him "nigger" ("the N* word"). Several coworkers were in the vicinity of Rick and Mr. Teel when Rick called him the N* word.

36. Mr. Teel was extremely offended by Rick's use of the N* word and chose to leave the situation rather than react to it.

37. However, when Mr. Teel departed the building and left the premises, Rick ran up to him again, this time from behind. Rick grabbed Plaintiff by the hair and head and pulled on his hair. When Mr. Teel managed to remove Rick's grip, Mr. Teel continued to walk off the premises, but once again, Rick ran towards him, this time attempting to kick Mr. Teel in the genitals.

38. Upon information and belief, after this incident, Mr. Teel sent a text message to one of his supervisors, Clyde Cameron III, who is related to Rick Cameron by marriage, stating what had happened and that "y'all brought me here to harass me."

39. Rather than investigate the facts of the incident, Clyde Cameron III responded by immediately terminating the Plaintiff, advising him that he was prohibited from entering the premises, and stating that he would send Mr. Teel his last check by mail.

40. When Mr. Teel returned home, he called the police and filed a police report detailing the incident that had occurred.

41. On or around May 2021, one of Mr. Teel's former co-workers informed Plaintiff by phone that Rick was still working at Beacon and had only received one week of *paid* suspension as a consequence of the April 23, 2021, incident.

42. Upon information and belief, the same co-worker also informed Mr. Teel that the Cameron family had witnessed the attack on videotape and were ignoring other coworkers' and customers' inquiries into what had happened surrounding Mr. Teel's termination.

43. Rick's actions towards Mr. Teel, most especially his use of the N* word during his physical altercation with the Mr. Teel, was a part of an ongoing pattern of grossly hostile and discriminatory treatment of Mr. Teel based on his race/color.

44. As a direct and proximate result of the hostile work environment, Mr. Teel has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and mental anguish and emotional distress.

45. Mr. Teel was both subjectively and objectively offended and uncomfortable with the racial discrimination, harassment, and the racially motivated physical altercation that took place in the workplace.

46. Defendants utterly failed to take any steps to correct or remedy the discrimination and harassment, despite their being witnesses to and camera footage of the property showing that Mr. Teel was the victim of an attack. In fact, Defendants have attempted to ignore the incident by refusing to acknowledge or remedy it. Further, Beacon terminated Plaintiff in retaliation for stating that he had been harassed and attacked, despite knowledge that Plaintiff was the victim of a physical attack.

**The Company's Failure to Pay Equally for Substantially Similar Work Performed by Mr. Teel**

47. Further, Mr. Teel had been receiving less wages than he was entitled to by law.

48. Mr. Teel began with a wage of $10/hour. Another Machine Operator, who was referred to onsite as "light-skinned Jermaine," was making $16/hour at Mr. Teel's start date. Although Jermaine had been at the company for twelve years when Plaintiff started, Jermaine's responsibilities were the same, if not less substantial, than Plaintiff's. For example, Jermaine's main responsibility was to break down sheets of metal to extract the precious metals, which was one of the numerous tasks Plaintiff did on a daily basis.

49. By April of 2021, Jermaine was making $23/hour, as compared to Mr. Teel's $15/hour.

50. In 2020, a new employee, Lance Tarver, started as a Laborer at Beacon.

7

51. Mr. Tarver has a similar skin complexion to Jermaine i.e., of a lighter complexion than Mr. Teel.

52. Mr. Tarver had no experience working with machines or metals prior to beginning his employment, and as such, Mr. Teel trained and supervised him.

53. On or around late 2020, Mr. Teel learned that Mr. Tarver was making $2 more an hour than Mr. Teel, despite Mr. Teel having trained him and being significantly more experienced in working with metals.

54. Only when Mr. Teel complained of this to his supervisors did he receive a raise of $15/hour, which at the time of his termination, was the same amount earned by Mr. Tarver.

## COUNT I
### Disparate Treatment in Violation of Section 1981
(Civil Rights Act of 1866, 42 U.S.C. § 1981)

55. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

56. Plaintiff is a black man, and as such he belongs to a protected class under Section 1981.

57. Defendants have discriminated against Plaintiff on the basis of his race in violation of Section 1981 by, *inter alia*, denying him the equal terms and conditions of employment by fostering a work environment where he was subjected to disparate treatment based on his race in the form of repeated and targeted racial slurs made in public by Mr. Cameron, unequal pay based on race, promotion of and refusal to prevent or disrupt a racially charged physical attack by Mr. Cameron, and the termination of Plaintiff's, rather than Mr. Cameron's, employment immediately following the Incident.

58. But for Plaintiff's race, he would not have been terminated.

59. The owners, Ms. Cameron and Ms. Havens, who exercised managerial/supervisory control over Plaintiff, participated in the discriminatory acts and/or failed to take corrective action when they learned of the discriminatory acts.

60. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

61. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including but not limited to, depression, anxiety, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to an award of damages.

62. Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

## COUNT II
**Unlawful Harassment in Violation of Section 1981**
**(Civil Rights Act of 1866, 42 U.S.C. § 1981)**

63. Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

64. Plaintiff is a black man, and as such he belongs to a protected class under Section 1981.

65. Defendants have discriminated against Plaintiff on the basis of his race in violation of Section 1981 by, *inter alia*, denying him the equal terms and conditions of employment, fostering and condoning a hostile work environment where he was subjected to severe and pervasive discrimination based on his race.

66. But for Plaintiff's race, he would not have been subjected to a workplace that was permeated with highly offensive racist conduct that was significantly pervasive to alter the terms and conditions of his employment and create an abusive and offensive working environment.

67. For example, Plaintiff was, on a routine basis, subjected to discriminatory harassment, including but not limited to near constant racist slurs targeted at him including but not limited to "monkey," "buckwheat," and "Toby," a physical altercation that included being called the N* word, derogatory comments about complexions such as referring to another Black employee as "light-skinned Jermaine."

68. The discriminatory conduct was frequent and severe.

69. The discriminatory conduct was both objectively and subjectively offensive and humiliating.

70. The discriminatory conduct interfered with Plaintiff's work performance and impacted the terms and conditions of his employment.

71. The owners, Ms. Cameron and Ms. Havens, who exercised managerial/supervisory control over Plaintiff and Mr. Rick Cameron, participated in the discriminatory acts and/or failed to take corrective action when they learned of the discriminatory acts. As such, a specific basis exists for imputing the objectionable conduct to the employer.

72. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

73. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including but not limited to, depression, anxiety, sadness, emotional pain,

suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to an award of damages.

74. Defendants' unlawful actions constitute malicious, willful and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

## COUNT III
### Retaliation in Violation of Section 1981
(Civil Rights Act of 1866, 42 U.S.C. § 1981)

75. Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

76. Plaintiff is a black man, and as such he belongs to a protected class under Section 1981.

77. Plaintiff engaged in protective activities under Section 1981 when he informed Defendants about the physical assault and hostile work environment that he endured while employed by Defendants because of his race.

78. Defendants knew about the protected activity.

79. In response to Plaintiff's protected complaints, Defendants retaliated against Plaintiff by, *inter alia*, terminating him and informing him that he would be mailed his last check and would no longer be allowed on the premises where he was being subjected to severe and pervasive discrimination based on his race.

80. Defendants had no valid business justification for the retaliatory and abusive actions taken against Plaintiff following his engagement in protected activity.

81. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

82. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including but not limited to, depression, anxiety, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to an award of damages.

83. Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

## COUNT IV
### (Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"))

84. Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

85. Plaintiff was an "employee" within the meaning of Title VII.

86. Beacon was Plaintiff's "employer" within the meaning of Title VII.

87. Plaintiff is an African American black man and as such he belongs to a protected class under Title VII.

88. Plaintiff is, and has been at all relevant times, qualified for his position at Beacon and met or exceeded the Defendants expectations.

89. Defendants discriminated against Plaintiff on the basis of his race/color in violation of Title VII, by denying him the equal terms and conditions of employment, including but not limited to subjecting him to unequal pay, physical assault, racial slurs, and termination based on race/color.

90. Defendants discriminated against Plaintiff on the basis of his race/color in violation of the Title VII, by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to

prevent or to remedy a hostile work environment that included, among other things, subjecting Plaintiff to severe and pervasive discriminatory treatment and harassment.

91. A specific basis exists for imputing the objectionable conduct to the employer because the owners, Defendants Ms. Cameron and Ms. Havens were responsible for the conduct or openly condoned the conduct of others or failed to discourage the conduct of others and, as a result, no change resulted in any change in the conduct specified.

92. The discriminatory conduct was frequent and severe.

93. The discriminatory conduct involved humiliation in front of Plaintiff's co-workers

94. The discriminatory conduct included being shunned within the workplace.

95. The discriminatory conduct included but was not limited to near constant racist slurs targeted at him including but not limited to "monkey," "buckwheat," and "Toby," a physical altercation that included being called the N* word, derogatory comments about complexions such as referring to another Black employee as "light-skinned Jermaine."

96. Defendants conduct as alleged herein, constituted unlawful employment practices and unlawful discrimination on the basis of Plaintiff's race/color in violation of Title VII.

97. Defendants knew or should have known of the discriminatory conduct engaged in by Plaintiff's peers and failed to take immediate and appropriate corrective action to prevent such conduct; as such, the Defendants are liable.

98. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including but not limited to, depression, anxiety, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to an award of damages.

99. Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

### COUNT V
**(Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"))**

100. Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

101. Plaintiff is a black man, and as such he belongs to a protected class under Section 1981.

102. Plaintiff engaged in protected activities under Title VII when he informed Defendants about the physical assault and hostile work environment that he endured while employed by Defendants because of his race.

103. Defendants knew about the protected activity.

104. In response to Plaintiff's protected complaints, Defendants retaliated against Plaintiff by, *inter alia*, terminating him and informing him that he would be mailed his last check and would no longer be allowed on the premises where he was being subjected to severe and pervasive discrimination based on his race.

105. Defendants had no valid business justification for the retaliatory and abusive actions taken against Plaintiff following his engagement in protected activity.

106. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

107. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and

emotional distress, including but not limited to, depression, anxiety, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to an award of damages.

108. Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## COUNT VI
### (Discrimination in Violation of the New Jersey Law Against Discrimination, *N.J.S.A.* §§ 10:5-1 *et seq.* ("NJLAD"))

109. Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

110. Plaintiff is a black man and as such he belongs to a protected class under the NJLAD.

111. Defendants discriminated against Plaintiff on the basis of his race/color in violation of the NJLAD, by denying to him the equal terms and conditions of employment, including but not limited to subjecting him to unequal pay, physical assault, racial slurs, and termination based on race/color.

112. Defendants discriminated against Plaintiff on the basis of his race/color in violation of the NJLAD, by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to protect or remedy a hostile work environment that included, among other things, subjecting Plaintiff to severe and pervasive discrimination and harassment.

113. The discriminatory conduct was frequent and severe.

114. The discriminatory conduct included, but was not limited to, but was not limited to near constant racist slurs targeted at him including but not limited to "monkey," "buckwheat,"

and "Toby," a physical altercation that included being called the N* word, derogatory comments about complexions such as referring to another Black employee as "light-skinned Jermaine."

115. By the acts described above, the Defendants, directly and/or through its employees and/or agents, subjected Plaintiff to discrimination in violation of the NJLAD.

116. Defendants knew, or should have known, of the discriminatory conduct engaged in by Plaintiff's superiors and failed to take immediate and appropriate corrective action to prevent such conduct; as such, the Defendants are liable.

### COUNT VII
**(Retaliation in Violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1 *et seq.* ("NJLAD"))**

117. Plaintiff hereby repeats and re-alleges each and every one of the preceding allegations as if fully set forth herein.

118. Plaintiff is a black man and as such he belongs to a protected class under the NJLAD.

119. Plaintiff engaged in protective activities when he informed Defendants about the physical altercation and hostile work environment that he endured while employed by Defendants because of his race/color.

120. Shortly after Plaintiff's protected complaints, Defendants retaliated against Plaintiff by, *inter alia*, terminating him based on his race/color.

121. Defendants had no valid business justification for the retaliatory and abusive actions taken against Plaintiff following his engagement in protected activity.

122. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

123. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including but not limited to, depression, anxiety, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to an award of damages.

124. Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of the NJLAD, for which Plaintiff is entitled to an award of punitive damages.

### COUNT VIII
**(Violation of New Jersey Equal Pay Act, N.J.S.A. § 10:5-12(t) *et seq.* ("NJEPA"))**

125. Plaintiff hereby repeats and re-alleges each and every one of the preceding paragraphs as if fully set forth herein.

126. Plaintiff is a black man and as such he belongs to a protected class under the NJEPA.

127. Under the statute, an employer cannot pay a member of a protected class at a rate compensation which is less than the rate paid by the employer to employees who are not members of the protected class for substantially similar work.

128. While pay differences are allowed based on seniority, merit, training, education, experience, quantity or quality of production, at all relevant times, Plaintiff was paid less than or equal to other laborers of lighter skin complexion that performed substantially similar work despite Plaintiff's superior experience and quality of work.

129. As such, Plaintiff was unjustly compensated for substantially similar work during his tenure at Beacon in violation of the NJEPA.

130. As a direct result of Defendants' violations of the New Jersey State Equal Pay Act

Plaintiff has endured significant damages and is entitled compensatory, punitive, and treble damages, in addition to attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

    A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the Federal laws of the United States;

    B.    That Defendants are found to have violated the provisions of the New Jersey Law Against Discrimination under a theory of discrimination based on race and color, and retaliation as to Plaintiff.

    C.    That Defendants are found to have violated the New Jersey State Equal Pay Act as to Plaintiff;

    D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

    E.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and loss of reputation, any other physical and mental injuries;

    F.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

    G.    An award of punitive damages;

      H.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

      I.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: October 19, 2021

                              Respectfully submitted,

                              **THE LAW OFFICE OF**
                              **CHRISTOPHER Q. DAVIS, PLLC**

                              _____
                              John T. Pietruszka, Esq.
                              Christopher Q. Davis, Esq. (*pro hac vice* motion forthcoming)
                              354 Eisenhower Pkwy Building 2, Suite 2775
                              Livingston, New Jersey 07039
                              (646) 430-7930
                              *Attorneys for Plaintiff*